Habbe v. Viele.

HABBE v. VIELE.

[No. 18,009. Filed Jan. 13, 1897. Rehearing denied May 25, 1897.]

APPEAL AND ERROR.— *New Trial.—Record.—Presumption.*—Where all that is shown by the record as to the filing of a motion for a new trial is that it was taken up and presented for the consideration of the court, the parties being present, it will be presumed on appeal that the motion was duly and properly filed. *pp. 117, 118.*

SAME.—*Weight of Evidence.—Sufficiency of Evidence.*—The weight of the evidence is for the trial court, but its sufficiency to sustain the findings of the trial court may be considered on appeal. *p. 121.*

REFORMATION OF LEASE.—*Mistake.—Sufficiency of Evidence.*—In an action to reform a lease the evidence showed that the tenant of a certain storeroom, desiring to quit business procured defendant to take up the lease, to which plaintiff consented. Plaintiff drew up a contract by which the premises were leased to defendant for the unexpired term of the lease at a rental of $2,400.00 per year, it being agreed at the time that at the expiration of the lease defendant was to have the storeroom for an additional term at a fair and reasonable rental. The evidence further showed that a competitor of defendant desired the room and offered plaintiff more rent and a bonus; that plaintiff's husband, acting as her agent, proposed to defendant to extend the lease for a term of five years, at $3,000.00 per year, and a bonus of $500.00; that after defendant had taken time to consider the proposition, and the matter had been further discussed, the plaintiff's said husband drew up the lease which was for a term of seven years, at a rental of $2,000.00 for the first two years, and $3,000.00 for the last five and a bonus of $500.00; that a typewritten copy of the lease was made, and the plaintiff acknowledged them in duplicate, the original being recorded, and the copy delivered to defendant, at which time the defendant paid the $500.00 bonus; that when the first month's rent became due, defendant, for

the purpose of paying the rent, drew his check for $166.66, and plaintiff drew a receipt for $200.00, claiming that there had been a mistake in drawing the lease. *Held,* that the evidence was insufficient to show that there had been a mutual mistake in the execution of the lease. *pp. 118–124.*

APPEAL AND ERROR. —*Vacation Entry by Clerk will be Disregarded on Appeal.*—A statement in a transcript that a motion for a new trial was filed with the clerk in vacation is no part of the record, and will be disregarded on appeal. *p. 126.*

From the Vanderburgh Circuit Court. *Reversed.*

*J. W. Spencer* and *J. R. Brill,* for appellant.

*J. E. Williamson,* for appellee.

HOWARD, J.—This was an action brought by appellee to reform a lease given by her to appellant for a double store room in the city of Evansville. The court found for appellee and entered a decree reforming the lease as prayed for. It is contended that the evidence does not support the finding.

Appellee does not discuss the question raised in appellant's brief, but contents herself with saying that there is evidence in the record to support the finding. She does contend, however, that the appeal is not properly before the court, for the reason that the motion for a new trial in the court below was not filed at the proper time. We do not think the question so raised by the appellee has been properly saved and presented for our consideration. The court entertained and passed on the motion for a new trial without objection or exception by appellee. The record shows that the findings and judgment were had on the last day of the September term of court. The motion for a new trial might, therefore, be made on the first day of the next, or December term. Section 570 Burns' R. S. 1894 (561, R. S. 1881); *Evansville, etc., R. R. Co.* v. *Maddux,* 134 Ind. 571. The motion for a new trial was

taken up and presented for the consideration of the court on the thirteenth judicial day of the December term, the parties being present. In the absence of any objection then or thereafter taken to the action of the court in entertaining and passing upon the motion, we must presume in favor of the regularity of such action, and, consequently, that the court found the motion to have been filed at the proper time. See *World's Fair, etc., Co.* v. *Gasch*, 162 Ill. 402, 44 N. E. 724.

Did the error in fact exist, the attention of the trial court should have been called to it that it might be corrected. Moreover, if the party excepting were still dissatisfied with the ruling, the alleged error should be shown to this court, as in *Emison* v. *Shepard*, 121 Ind. 184, to which we are cited by counsel.

It appears that appellee, who was represented by her husband, Charles Viele, as agent, was the owner of the double store in question, and that the same had been rented for many years to J. F. Lindley & Son, and to their predecessors, at an annual rental of from $1,500.00 to $2,400.00, the latter amount being the rental at the date of the proceedings. The Lindley lease was in parol, and had two years to run from January 1, 1895. The Lindleys desiring to quit business procured appellant to take the lease off their hands. To this appellant consented, and Charles Viele drew up a written contract by which the premises were turned over to appellant for the unexpired term of the lease at the rental of $2,400.00 a year. Appellant was engaged in the clothing business, and it seems that he had a rival whose place of business was next door to appellee's store, and who, about the time when the negotiations were completed, offered the Lindleys a bonus for the unexpired term of the lease. Charles Viele, however, told Lindley that the negotiations with the appellant had proceeded too far, and

the offered bonus was rejected. At the time of accepting appellant as tenant, it was agreed between appellant and appellee that appellant was to have the store room at the end of the Lindley lease, "for an additional term, at a fair and reasonable rental." Soon after this contract was made, Viele went to appellant with a proposition that appellant should continue as tenant after the expiration of the Lindley lease, that is, after January 1, 1897, saying at the same time, that he "had an offer of five years' extension to the present term at $3,000.00 a year rent, and $500.00 bonus." Appellant asked who had made that offer, but Viele answered: "Do not ask any questions." Appellant then said he would have to have time to consider the proposition. About a week's time was agreed to, Viele leaving his proposition in writing: "Five years' extension at $3,000.00 per year, and $500.00 bonus."

Viele returned at the appointed time. Up to this, there is little or no discrepancy in the evidence. Mr. Viele's testimony now continues: "I went to Mr. Habbe and asked him what he had decided to do. He hesitated a moment and said he would accept my proposition. I then asked him who his attorneys were, and who he preferred should draw the lease. He said [after naming the attorneys] he was not particular about who drew the lease. I told him I had been renting property and writing leases for forty years or more and would, if agreeable to him, prepare the lease myself and save an attorney's fee. I went home and drew the lease and gave the same to Mr. Sonntag to have a type written copy made, and he made the same, took the copy with the original to Mr. Habbe, after having taken them both to my wife, Mary J. Viele, [the appellee], and having her sign and acknowledge the same. Mr. Sonntag returned the original lease in my handwriting to me, and left the typewritten copy with Mr. Habbe. I had the lease recorded."

Appellant's version of these negotiations is as follows: "Mr. Viele came to me and said he had a proposition submitted to him for the rental of that building from the first of January, 1897, for five years at $3,000.00 a year and $500.00 bonus. I asked him whose proposition it was, and he said, 'Ask no questions.' * * * I had rather a heated conversation with Mr. Viele. I told him that I could not give him an answer. I said 'Mr. Viele, do you recollect that conversation I had with you, that I was to be the continuous tenant at a fair and reasonable rental? I believe I know the reason this proposition has been submitted to you. Mr. Viele don't you know that if you took me out of competition for this building that you could not get $2,400.00 a year for it, much less $3,000.00 a year for it, and that it was not right to treat a tenant like that?' 'Well,' he said, 'a man has got to do the best he can.' I did not take this in good faith. This is about all I said to Mr. Viele at that time. Now when he came to me about this building, I guess that I gave him to understand that the proposition he submitted to me was impossible, and I spoke of the expense of moving, and that I would not be out of there until the 15th of August, and said that I would have to have time to consider that. And a short time after that Mr. Viele came to my store at 209 Main street, and he began talking about the building, and I was telling him about the expense of repairs and moving; and then he said: 'Mr. Habbe, you may have the building the first two years at $2,000.00 per year, and for five years after that at $3,000.00 per year, and a bonus of $500.00.' Well, in any event, Mr. Viele made this agreement. That is the second time he came back. The proposition was $2,000.00 a year for two years, $3,000.00 for five years, and $500.00 bonus. I calculated that mentally and knew that my rent

would be raised, but that I would get a much longer term on the building. I told Mr. Viele that the proposition was acceptable. * * * Mr. Sonntag came down there with the new lease in Mr. Viele's own handwriting and brought a typewritten copy, each signed by Mrs. Mary J. Viele, and inasmuch as this was a term of seven years' lease, I took the two leases and read them carefully and compared them, and found that they set out the contract exactly as I understood it, and just as Mr. Viele had stated it to me. I then signed them both; and I believe that Mr. Sonntag took them away with him, I think for the purpose of having something done to them by a notary public, to put his seal on them. When he brought it back I gave him a check for $500.00 and that completed the lease."

When the time came for paying the first month's rent, that from January 1, 1895, appellant drew his check for $166.66, being at the rate of $2,000.00 a year; while appellee drew a receipt for $200.00, being at the rate of $2,400.00 a year. This began the controversy which finally resulted in the present action, appellant insisting that the lease as drawn by Mr. Viele was in accordance with their agreement, while Mr. Viele himself declared that he had made a mistake in drawing the lease, and that it was not according to the contract.

The question here is not as to the weight of the evidence, but as to its sufficiency. The weight of the evidence was for the trial court, but its sufficiency to sustain the findings may be considered by this court. *Lake Erie, etc., R. R. Co.* v. *Stick*, 143 Ind. 449; *Wabash Paper Co.* v. *Webb*, 146 Ind. 303.

It is said by Mr. Bispham in his work on equity, section 196, that "Equity will not grant relief in cases of mistake except upon very clear evidence. Where it

is admitted in the answer, there can, of course, be little difficulty in granting relief; but where the fact of mistake is denied in the answer, evidence to overcome such denial must be of the most persuasive character."

"To reform a contract, and then enforce it in its new shape," says the same authority, section 469, "calls for a much greater exercise of the power of a chancellor than simply to set the transaction aside. Reformation is a much more delicate remedy than rescission. Hence, in order to justify a decree for reformation in cases of pure mistake, it is necessary that the mistake should have been mutual. Where the mistake has been on one side only, the utmost that the party desiring relief can obtain is rescission, not reformation." And again, "A person who seeks to rectify a deed on the ground of a mistake must establish, in the clearest and most satisfactory manner, that the alleged intention to which he desires it to be made conformable continued concurrently, in the minds of all parties, down to the time of its execution." See, also, *Stockbridge Iron Co.* v. *Hudson Iron Co.*, 107 Mass. 290, at pp. 316, 317; *Green* v. *Stone*, 54 N. J. Eq. 387, 34 Atl. 1099; and 2 Beach Contracts, section 870, and notes.

"The writing," said this court in *Dale* v. *Evans*, 14 Ind. 288, "should be read by the light of surrounding circumstances, to understand the meaning and intent of the parties, and, if necessary, that far parol evidence might be received; 'but, as the parties have constituted the writing to be the only outward and visible expression of their meaning, no other words are to be added to it, nor substituted in its stead.' 1 Greenleaf on Ev., section 277. And therefore, 'all testimony of a previous colloquium between the parties, or of conversation or declarations at the time when it was completed, or afterwards, as it would tend, in many in-

stances, to substitute a new and different contract for the one which was really agreed upon, to the prejudice, possibly, of one of the parties, is rejected.' *Id.* section 275. These are salutary rules of evidence, and should not be departed from, even in equity, unless in instances where the evidence offered is clear, and unambiguous, and relief should not be extended where the evidence is loose, equivocal, contradictory, or in its texture open to doubt or opposing presumptions. 1 Story's Eq., section 157." See, also, *Linn* v. *Barkey,* 7 Ind. 69; *Citizens', etc., Bank* v. *Judy,* 146 Ind. 322; *Board, etc.,* v. *Owens,* 138 Ind. 183, and authorities cited on pp. 186 and 187.

Tested by these principles, we do not think that any evidence given on the trial was sufficient to show that the lease ought to be reformed as prayed for. There was evidence to show that the appellee may have understood the agreement to have been that the rent for the first two years should be at the rate of $2,400.00; but we do not think that any such evidence was of that "persuasive character" needed to show that this was also the understanding of the appellant. The evidence is certainly not such as to "establish in the clearest and most satisfactory manner" the mutuality of the alleged mistake. If the appellant at the time the terms of the lease were agreed upon, understood these terms to be as appellee now contends for, such understanding must be drawn from vague and uncertain inferences, rather than from any clear or unequivocal evidence found in the record.

If "the writing should be read by the light of surrounding circumstances," as said in *Dale* v. *Evans, supra,* then many reasons will be suggested to show that the agreement was as the lease was written. The appellant went to the new location with the expectation and agreement that he should remain for many

years, "at a fair and reasonable rental." He was, therefore, anxious to enter into the new and long time tenancy. Yet he might well be indignant that advantage should be taken of a rival's offer of a large bonus and increased rental, to force him into making a contract less favorable than he had a right to anticipate. On the other hand, the $500.00 cash, with an addition, after two years, of $600.00 a year to her former rental, would act persuasively on the mind of the appellee. The compromise shown in the lease would be a natural outcome. That Mr. Viele, shown to be over seventy years of age, and having been for so long accustomed to draw $200.00 a month rent, should have forgotten the terms of the compromise, does not seem improbable.

The "proposition" made to appellant, and which Mr. Viele says he put into writing, was: "Five years' extension at $3,000.00 per year and $500.00 bonus." This proposition, Mr. Viele says, appellant agreed to; and that is not denied by the appellant. On the contrary, he has paid the bonus, and stands ready to carry out the other terms of the lease as stated in the proposition agreed to. But he says, that to induce him to agree to the "proposition," appellee consented to reduce the rent for the first two years from $2,400.00 to $2,000.00 a year. We do not think there is a particle of evidence in the record to show that appellant ever understood that the lease should not be drawn to make this reduction. If there is any such evidence it must be by way of inference, and only of the most meager and unsatisfactory character.

Besides, it is to be remembered that appellant already had, by assignment, a lease for the first two years, at $2,400.00. If the new lease was made to include this time, together with the "five years' extension," it must have been for some purpose. The com-

promise shown in the new lease, as written, would seem to disclose such a reasonable purpose, namely, a reduction of the rent for this period in consideration of the increase for the five-year period and the bonus.

Another reason may be mentioned why the reformation asked for ought not to be granted. Unless in case of the clearest evidence of inadvertence, relief should not be granted if the mistake is the result of the party's own negligence, or that of his attorney. "Under this head," says Mr. Bispham, in the work already cited, section 191, "should be classed mistakes into which a party has fallen, because he has not made use of the means of inquiry which were open to him; as (for instance) where he has not taken the trouble to read the paper which he was executing." See, also, Kerr Fraud and Mistakes, Am. Ed. 407; *Glenn* v. *Statler*, 42 Iowa 107.

Charles Viele, the husband and agent of appellee, himself wrote the lease, and appellee signed and acknowledged it in duplicate, before it was taken to appellant. After its execution with these formalities she placed it on record. Ought not appellee after all this, be conclusively held to know the contents of the lease; particularly when there is only the vaguest evidence to show that appellant did not understand it to be just as appellee had written it? This is not the case of a scrivener committing an agreement to writing in terms different from the mutual understanding of the parties. Mr. Viele wrote the lease himself, had a typewritten copy made, had his wife sign and acknowledge the original and the copy, then put it on record. He ought to know the contents.

The judgment is reversed, with instructions to grant a new trial.

Habbe *v.* Viele.

ON PETITION FOR REHEARING.

HOWARD, J.—The learned and accomplished coun-
sel for appellee seems to have misapprehended, in
some degree, the force of our decision as to the filing
of the motion for a new trial. The record proper fails
to show when this motion was filed. It should, of
course, as required by statute, have been filed on the
first day of the December term. The showing made
in the record, however, as said in the original opinion,
is, simply, that "the motion for a new trial was taken
up and presented for the consideration of the court on
the thirteenth judicial day of the December term, the
parties being present." From the circumstances that
the court then considered and ruled upon it, we must
presume that the motion was regularly before that
tribunal, that is, that the motion had been duly filed,
as required by law. Nothing further was decided as
to this matter in the original opinion.

As to the statement found in the transcript, that
the motion was filed with the clerk in vacation, and
previous to the first day of the term, even if that state-
ment should be regarded, it would not follow that the
motion was not afterwards, and at the proper time,
duly filed in court. But it is, rather, to be said, that
the clerk's so-called "vacation entry" to show such
filing, is no part of the record, and that it was, there-
fore, not regarded or alluded to in the original opinion.
There can be no such thing as a court order made by a
vacation entry of the clerk. Orders are made by the
court itself, or, in certain cases, by the judge in vaca-
tion. This "vacation entry" is to be wholly disre-
garded. The record, therefore, failing to show any-
thing in relation to the filing of the motion for a new
trial, and the court having taken up and passed upon
the motion at a time after the day when it should have

been filed, we must, as before said, "presume in favor of the regularity of such action, and, consequently, that the court found the motion to have been filed at the proper time." So it was held in *Secor* v. *Souder*, 95 Ind. 95, cited by appellee that, "nothing to the .contrary being shown, the presumption is the court de·cided rightly." In the cases cited and relied upon by counsel, the filing of, or the offer to file, the motion for a new trial was shown by the record to have been out of due time. Here, there being no showing as to this matter, the presumption in favor of the court's action must control.

Petition overruled.