**Bertha L. REASOR, Appellant–Defendant,**

v.

**PUTNAM COUNTY, Indiana, S. Page Cotton, Jr., Narda G. Cotton a/k/a Narda Cotton, James G. Bryant, Winifred J. Bryant, John F. Hiemenz, Jr., Joann M. Hiemenz, J. Ronald Terry, a/k/a James Ronald Terry, Anthony William Harmless, Patricia Mullen Harmless, James R. Gammon, Sharon S. Gammon, James E. Ross, Judith D. Ross, Edward G. Ypma, and Eleanor S. Ypma, Appellees–Plaintiffs,**

**Alan Stanley and Alan Stanley and Associates, Inc., Appellees–Third–Party Defendants.**

**No. 55A05–9203–CV–67.**

Court of Appeals of Indiana, Fifth District.

June 8, 1993.

Rehearing Denied Aug. 19, 1993.

Gregory W. Black, Deckard & O'Brien, Danville, for appellant-defendant.

Robert J. Lowe, Greencastle, for appellees-plaintiffs.

BARTEAU, Judge.

In this real estate dispute, the trial court ordered that the deeds to several lots, once owned by Appellant, ninety-three year-old Bertha Reasor, and her late husband, Walker Reasor, be reformed. The facts which gave rise to this order span nearly thirty years and are discussed in detail below. Reasor raises several issues in this appeal, which, for the sake of clarity, are set out after the facts. For reasons discussed below, we reverse in part and affirm in part.

### FACTS

Bertha Reasor and her late husband Walker owned approximately 173 acres of

land in Putnam County, northwest of Greencastle, Indiana. The property is bordered on the east by Dunbar Bridge Road, and on the south by Reasor Hills Drive. Reasor Hills Drive was a private road until it was conveyed to the county by the Reasors in the late 1960's.

In the late 1960's to 1970, Reasors conveyed eight lots immediately north of Reasor Hills Drive to eight different buyers, conveying the lots in order from west to east. Instead of preparing a plat of the entire property, Mr. Reasor had Alan Stanley prepare surveys and legal descriptions as each lot was sold. Stanley prepared the legal descriptions for all of the conveyances except for the first, based on instructions from Mr. Reasor. For some of the lots, Mr. Reasor and the buyer had set corner stakes. However, all of the lots were sold on the basis of acreage and the buyers understood that the location of the stakes might have to be adjusted to conform to the desired acreage. The deeds were signed by the original owners as well as Mr. and Mrs. Reasor. The lots were conveyed in order from west to east as follows:

| 1 | 2 | 3 | 4 | 5 | | 6 | 7 | 8 |
|---|---|---|---|---|---|---|---|---|
| DeBoer/ Ross | Bryant | Ympa | Gray/ Harmless | Ulm/ Terry | E A S E M E N T | Cotton | Hiemenz | Gammon |

In preparing the legal descriptions, Stanley assumed an east-west bearing consistent with the legal description in the deed used for the first conveyance (reminder—Stanley did not prepare the legal description for the first conveyance). This east-west bearing was used as a beginning point for each of the subsequent descriptions.

Before Walker Reasor sold the sixth lot from the west to Cotton, he decided to keep a 50–foot strip of property between the fifth and sixth lots, and to grant an easement to the owners of lots 5 and 6. He told Stanley this when he hired him to prepare the legal description for Lot 6 (Cotton). However, Cotton and Walker Reasor set the stake for the south-west corner of the lot only 31 feet from Lot 5 (Ulm/Terry), while the north-west stake was set 50 feet from Lot 5. Stanley knew this and discussed it with Walker Reasor. However, Stanley instructed his employees to prepare a legal description which accounted for the the easement. Lot 6 was therefore described on paper with a west property line that was parallel to, and fifty feet away from, the east line of the Ulm/Terry lot. (R. 976). However, the description is inconsistent with the property actually being occupied by Cotton. The descriptions of the two lots east of the Cotton lots were prepared as if there was a fifty-foot easement west of the Cotton lot. (R. 978).

In 1983, after Walker Reasor had died, Bertha Reasor decided to build a fence on the southern border of her property and employed Stanley's surveying firm to stake a fence on the property lines between her property and the conveyed lots. Stanley did not rely on the legal descriptions in the deeds; rather, his employees staked the fenceline according to markers they found in the field, including evidence of an old fence. The staking was completed in 1984. Reasor then had the fence built according to Stanley's stakes.

In 1985, after the new fence had been completed, Reasor was involved in a dispute with Putnam County over some damage allegedly done to her property by county road crews. She hired a different surveyor, Stanley Shartle, to survey the entire 173 acres. Shartle used the bearing system and the initial or "beginning point" as published by Stanley in the Bryant and

Ympa deeds (Lots 2 and 3), but not in any of the other deeds. The bearing system uses the east-west quarter-quarter section line "beginning at the stone marking the northwest corner of the northeast quarter of northwest quarter of Section 17, Township 14 North, Range 4 West; thence east...." Shartle looked for a stone marking the northeast corner of the property; however, the stone he found was not the marker used by Stanley in preparing the deeds. Therefore, Shartle's survey resulted in a plat, that, when compared to Stanley's, showed every boundary as being different. Shartle also determined that, in his opinion, the fenceline which Stanley staked was farther north than the border indicated by the legal descriptions Stanley prepared. Stanley agreed to this at trial, but maintained that the fenceline indicated what the parties originally intended to be the property line between the properties. Some of the original buyers testified (after the fence had been built) that the new fence was built along what they believed to be their northern property line. As to the difference between the starting points, both surveyors and the trial court agree that "[h]onest surveyors may legitimately differ on starting points and bearing systems." There is no evidence that one survey—either that of Stanley or Shartle—is "more correct" than the other.

Alan Stanley also prepared two inconsistent, inadequate legal descriptions for Reasor Hills Drive. Neither one was intended to be used for conveyance purposes; however, one was used in a warranty deed from Reasors to the County which was recorded in 1967 and the other appeared in a dedication of the road to the County, which was also recorded. All agree that both descriptions are inadequate and should be reformed.

After Shartle told her about the problems with the fence and the legal descriptions, Reasor, her attorney and Shartle contacted Stanley, who was at that time county surveyor, and his personal lawyer, Robert Lowe, who, coincidentally, was the county attorney. Reasor suggested that Stanley build a new fence, using the correct property lines as reflected in the legal descriptions. Stanley refused because he maintained that, although he did not consult the legal descriptions in staking the fenceline, the stakes represented the true intentions of the parties as to the northern boundaries. He also maintained that with the exception of the Bryant and Ympa deeds (Lots 2 and 3), the descriptions of the lots west of the easement are essentially correct and adequate. As to the three lots east of the easement, Stanley maintained that these descriptions are incorrect because the Cotton property cuts into the easement. The parties nonetheless engaged in negotiations. While engaged in negotiations with Reasor, Stanley and Lowe approached the County Commissioners about bringing a reformation action against Reasor. The commissioners approved the lawsuit and approached the property owners, most of whom were joined as plaintiffs.

Putnam County and all but one of the property owners (collectively referred to as "County"), filed suit against Bertha Reasor. She in turn, sued the County and Alan Stanley. After an eight-day trial, several amendments to the pleadings, and three and ½ years, the trial court issued its decision. A summary of the allegations and the court's order follows:

*1. Putnam County and Landowners v. Reasor*—This lawsuit was initiated on May 20, 1986, when the County and the landowners sued Reasor for reformation of all of the deeds from the eight conveyed lots. The County also sought reformation of the deed conveying Reasor Hills Drive to the county. All agree the road was not properly described. In an amended complaint filed March 26, 1987, the County alleged Reasor violated a county ordinance prohibiting grading property in such a way so as to cause drainage on to a county road. This allegation stemmed from bulldozing activity conducted by Reasor on June 9, 1986, after the first complaint was filed. The County sought $25.00/day for each day the condition remained.

The court held that all of the deeds would be reformed by Stanley with the

expenses to be paid by Stanley or his corporation. Although the court found that Reasor violated the county ordinance in the way in which she graded the property, the court refused to order her to pay a fine.

*2. Reasor v. Alan Stanley and Alan Stanley and Assoc., Inc.*—In a third party complaint, Reasor sued Stanley for negligence and breach of contract in preparing the legal descriptions, and for negligence in staking the fence. She also charged bad faith and breach of his ethical duty as a surveyor for discussing the dispute over the legal descriptions with others.

The court found that Stanley did not breach a duty to Reasor, but that he admitted responsibility for incorrectly describing the three eastern lots. The court awarded Reasor $1,750 in damages and ordered Stanley to pay $2,000 in surveying costs incurred by Reasor. Stanley was also ordered to buy property from Cotton so that the easement would be 50 feet wide at all points.

*3. Reasor v. Putnam County*—In a counterclaim, Reasor sought an order from the court to mandate the County to maintain Reasor Hills Drive in a better condition. She also sought an order requiring the gravelled portion of the road to be moved, alleging that the surface has shifted to the north over the years. The court refused to order the County to maintain the road in any different condition or to move the road.

*4. Stanley v. Reasor*—In a counterclaim against Reasor, Alan Stanley alleged defamation as a result of the lawsuit.

The court found for Reasor on Stanley's claim.

### ISSUES

I.   Whether there is sufficient evidence to support reformation of all the deeds;

II.  Whether the trial court erred in failing to find Stanley negligent for misidentifying Reasor's south property line;

III. Whether the court erred in not finding Stanley breached his duty to Reasor by disclosing the problems with the legal descriptions to third parties without Reasor's approval and that Stanley did not commit abuse of process; and

IV.  Whether the court erred in refusing to mandate the County to maintain Reasor Hill Road to standards set out in the county ordinance.

### STANDARD OF REVIEW

Reasor attacks the findings of facts as not supported by the evidence and the conclusions of law as contrary to law. Although the trial court entered findings of fact and conclusions of law, a review of the thirteen-volume record reveals no motion from either party nor from the court for findings of fact and conclusions of law pursuant to Ind.Trial Rule 52. Therefore, the specific findings control only as to the issues they cover, while a general judgment standard applies to any issue upon which the court has not found. We may affirm a general judgment on any theory supported by the evidence adduced at trial. *Woods v. Harris* (1992), Ind.App., 600 N.E.2d 163. We may view only the evidence most favorable to the court's judgment and we may not weigh the evidence nor judge the credibility of the witnesses.

### SUFFICIENCY OF THE EVIDENCE

Reasor argues the evidence is insufficient to support reformation of *all* the deeds. The County argues that there is substantial evidence to support reformation of the deeds.

Reasor argues that reformation is not warranted because the County failed to meet its burden of proving "beyond any reasonable controversy" that a mistake had been made in the original legal descriptions. Reasor argues that this is a stricter standard than the usual "preponderance of the evidence" standard required in most civil cases and employed by the trial court here. County argues that the proper burden of proof is by a preponderance of the

evidence. Alternatively, County argues the evidence here easily meets any stricter burden of proof that may be required.

▆▆▆ Reformation of any written instrument is an extreme equitable remedy to relieve the parties of mutual mistake or of fraud. *Board of Comm'rs of Hamilton County v. Owens* (1894), 138 Ind. 183, 186, 37 N.E. 602. Therefore, equity will reform documents in very limited circumstances: 1) where there is a mutual mistake, i.e., where the written instrument does not reflect what the parties truly intended; and 2) where there had been a mistake on the part of one party accompanied by fraud or inequitable conduct by the other party. *Pearson v. Winfield* (1974), 160 Ind.App. 613, 618, 313 N.E.2d 95, 99. It is the first circumstance, alleged mutual mistake, that is at issue here. In such a case, the written instrument will be reformed only where there is ' "the clearest and most satisfactory proof of the mistake and of the agreement between the parties." ' *Owens*, 138 Ind. at 186, 37 N.E. at 603 (quoting, *Gray v. Woods*, 4 Blackf. 432). *See also Habbe v. Viele* (1897), 148 Ind. 116, 122, 45 N.E. 783, 785; *Citizen's Nat'l Bank of Attica v. Judy* (1896), 146 Ind. 322, 347, 43 N.E. 259.

▆▆▆ Applying Indiana law, the court in *Holly Stores v. Judie* (7th Cir.1950), 179 F.2d 730, 737, *cert. denied,* (1950), 340 U.S. 814, 71 S.Ct. 43, 95 L.Ed. 598, required clear and convincing proof as to a mutual mistake before reformation could be ordered. More recently, this court stated the burden of proof as follows:

A party seeking reformation on the ground of mutual mistake must establish *by clear and satisfactory proof the true intentions common to all parties to the instrument,* that a mistake was made, and that the mistake was mutual and consequently the instrument, as written, does not state the true intention or agreement of the parties.

The primary purpose of reformation is to effectuate the common intentions of *all parties to an instrument which were incorrectly reduced to writing.* It follows that a grant of reformation is necessarily predicated upon a prior un-

derstanding between all parties on all essential terms. Otherwise, there would be no standard to which an instrument could be reformed.

*Pearson,* 160 Ind.App. at 618, 313 N.E.2d at 99, (emphasis supplied). It is clear from this language that something more than a preponderance of the evidence is required. *See* 66 Am.Jur.2d *Reformation of Instruments* § 123 (1973). Indeed, many other jurisdictions require "clear and convincing proof" because of the policy that a written instrument is presumed to contain the intent of the parties, with reformation being an extreme remedy. *Id.* We therefore hold that before reformation of deeds because of mutual mistake may be ordered, the party seeking reformation must show by clear and convincing evidence that a mistake has been made.

All parties agree that the legal description to Reasor Hills Drive should be reformed because the description in the deed of record is inadequate. Therefore, we affirm as to the reformation of the deed to Reasor Hills Drive.

▆▆▆ As to lots 2 and 3, the Bryant and Ympa properties, it is undisputed that the lots were intended to border Reasor Hills Drive. However, under the current legal descriptions, they do not do so; therefore, the trial court properly granted County's request for reformation as to these lots.

▆▆▆ With respect to lots east of the easement, (Lots 6–8), Reasor argues that the legal description for lot 6 was prepared as if there was a fifty-feet easement between lot 5 and lot 6 at all points. Lots 7 and 8, according to Reasor, were prepared in relation to 6; therefore, the legal descriptions reflect the intent of the parties. Stanley argues the descriptions are incorrect because they do not reflect the property currently being occupied by the owners of these lots.

Stanley testified at trial that he knew before doing the Cotton survey that the stake marking the southwest corner of the Cotton property was only 31 feet away from the Ulm/Terry property. At that time, he suggested to Walker Reasor that

he could convey the property to the stake to Cotton, but that Reasor should obtain a right-of-way from Cotton. However, Stanley instructed his staff preparing the legal description to maintain a fifty-foot easement west of the Cotton property. The legal description, therefore, described a lot 50 feet away from the Ulm/Terry lot. The lots east of Cotton—Hiemenz and Gammon—were prepared consistent with the Cotton property.

The trial court found, and the evidence at trial was that the legal descriptions to lots 6–8 reflect the intentions of the parties that there be a fifty-foot strip between lots 5 and 6. The mistake, therefore, is not with the legal descriptions, but with the property being occupied by the landowners. Because the deeds as they currently exist reflect the intentions of the parties, they should not be reformed.

■■■■■ We realize that if the fifty-foot strip is maintained, Cotton will be denied some property which he originally purchased. Stanley, who admits that he was at fault for this problem, was properly ordered by the trial court to compensate Cotton for this property or to pay Reasor monetary damages. However, there is no evidence that the owners of lots 7 and 8, Hiemenz and Gammon, will be denied any of the property that they purchased from Reasor.[1]

### NEGLIGENCE OF ALAN STANLEY

Reasor argues that the trial court erred in not finding Stanley negligent for marking the fenceline without consulting the

legal descriptions. According to Reasor, the fenceline is located north of what would be the southern border of Reasor's property if the deeds as they stand now are consulted. Stanley admits that the fenceline does not correspond to the property line as described in the deeds. However, he maintains that the fenceline is located on what the parties intended the property line to be. Under the proposed reformed deeds, the fenceline would be the southern border of Reasor's property.

■■■■■ Reasor appeals a negative judgment on this issue. When reviewing a negative judgment, we must determine whether the judgment is contrary to law. *In re Marriage of Wooten* (1990), Ind.App., 563 N.E.2d 636, 638. A judgment is contrary to law when the evidence is without conflict and leads to but one conclusion which is contrary to that reached by the trial court. *Id.* We do not reweigh the evidence nor judge the credibility of the witnesses; rather, we consider only the evidence most favorable to the prevailing party.

■■■■■ Surveyors may be held liable in tort for failing to skillfully discharge their contractual duties. *Essex v. Ryan* (1984), Ind.App., 446 N.E.2d 368, 371. The elements of a cause of action for negligence are: 1) duty; 2) a breach of that duty; and 3) injury to the plaintiff as a result of the breach. *Tucher v. Brothers Auto Salvage Yard* (1991), Ind.App., 564 N.E.2d 560, 562.

■■■■ Stanley had a contractual duty to mark all of the corners of Reasor's south property line.[2] He admitted at trial that he

---

1. Reasor also argues the action is barred by the statute of frauds, I.C. 32–2–1–1 "insofar as the statute applies to any contract for the sale of lands." However, the conveyances were evidenced by writings. She also argues the six-year statute of limitation in I.C. 34–1–2–1, concerning use of real property applies to bar the plaintiffs' action as to all deeds, since none was executed after 1978, and suit was not filed until May 20, 1986. In *Habig v. Bruning* (1993) Ind.App., 613 N.E.2d 61, we held that the discovery rule applies to I.C. 34–1–2–1. Thus, the statute of limitations begins to run when the plaintiffs knew, or should have known of the problems with the deeds. The alleged discrepancies were not discovered until 1984.

2. The agreement between Stanley and Reasor is evidenced by correspondence between Stanley and Reasor's daughter. Stanley submitted an estimate to Dr. Reasor by letter. The letter instructed her to sign the letter and return a copy to him if the bid was acceptable. Before returning a copy to Stanley, Reasor added some notations. Those notations are indicated below by [ ].

Dear [Dr.] Reasor:
This is to confirm our [maximum] estimate of $275.00 to stake the corners of [Bertha L. Reasor] property line. We will mark all the corners from the corner common to Roberts and Bryant on the west to the northeast corner of Gammons on the east. This will in-

knew Reasor would be building a fence based on the stakes. He also admitted that he did not consult the legal descriptions to determine the property line and that the line does not reflect what is contained in the legal descriptions. It should also be noted that Stanley did not mark the line; rather, employees of his company did. Although Stanley now claims to have marked the line in accordance with the true intentions of the parties, there is no indication that his crew had any knowledge of those intentions. Under these circumstances, the trial court erred in not finding Stanley negligent in discharging his duty to mark Reasor's property line.

As to damages, Reasor has been deprived of the use of her property south of the fence. She argues on appeal that she should be compensated for the cost of the fence that was built ($2,189.50 [3]), the value of the trees that were lost when this fence was built ($1,350.00), the cost of a new fence ($8,188.00), and her legal fees and expenses ($21,605.29 [4]).

■ The computation of damages is strictly a matter within the trial court's discretion. *Gasway v. Lalen* (1988), Ind. App., 526 N.E.2d 1199, 1203. Because the trial court did not find Stanley negligent for improperly staking the fenceline, there was no finding as to the amount of damages caused by this negligence. Since we are reversing the trial court on this issue and because the amount of damages caused by Stanley's breach is necessarily a question of fact, we remand to the trial court for a determination of damages on this issue.

### FRAUD AND BREACH OF PROFESSIONAL DUTY

In a somewhat confusing argument, Reasor argues that Stanley 1) fraudulently con-

cealed from her the location of the southern boundary of her property; 2) breached his professional duty of confidentiality by disclosing information about the property to the county and the neighboring landowners without her consent; and 3) committed abuse of process.

Reasor's arguments on these issues are confusing at best. She claims that Stanley "knowingly misrepresented the location of the boundary line of the Reasor property and fraudulently concealed from her what he knew to be the truth." (Appellant's Brief, p. 34–5). Although Stanley was negligent in his marking of the fence, the trial court's decision that Stanley did not fraudulently conceal the true boundary is supported by the record. Further, Reasor cites no authority for the proposition that breach of a surveyor's canon of ethics give rise to a cause of action against the surveyor. Further, with regard to Reasor's claim of abuse of process against Stanley, we agree with Stanley that, technically, it was the Board of County Commissioners who initiated the suit.

■ Nevertheless, we agree that there is arguably an appearance of impropriety here. The lawsuit originated from a dispute between Reasor and Stanley, who was employed by Reasor in his capacity as a private surveyor and not as county surveyor. Robert Lowe served as Stanley's private counsel throughout negotiations with Reasor. The County became involved in the dispute when, at the suggestion of Lowe and Stanley, the County Commissioners gave Lowe, who was also the County attorney, permission to bring suit on behalf of the County. Ostensibly acting on behalf of the County, Lowe then approached the other landowners, who likewise had not been involved in the dispute until *after*

---

clude the four corners of [Bertha L. Reasor] 50 foot access strip.
(R. 2602).

**3.** Reasor admits that she paid only one-half of this amount and the other half was paid by the adjoining landowners. She argues that this court could order Stanley to pay half of the amount to her and half of the amount to the other landowners. However, none of the other

landowners claimed at trial that Stanley was negligent, nor do they argue on appeal that they are entitled to compensation from Stanley. Therefore, we will not accept Reasor's invitation to *sua sponte* make such an award.

**4.** Reasor also admits that she only asked for $15,675.73 in legal fees at trial.

they were approached by Lowe and Stanley. The only interest the County had in the dispute between Reasor and Stanley was Reasor's counter-claim, brought after the County filed the complaint, that the County be ordered to maintain Reasor Hills Drive in a better condition.[5] Thus, it is difficult to discern whose interest Lowe was protecting—the County's public interest or Stanley's private interests. We also note that Mr. Lowe represents the County and Stanley in this appeal. Nevertheless, an appearance of impropriety does not, by itself, create a cause of action.

### MANDATE

Reasor argues the trial court erred in refusing to mandate the county to maintain Reasor Hills Drive to twenty-four feet on its travelled portion, as required by a county ordinance. According to Reasor, the undisputed evidence is that the road was twenty-four feet wide when it was accepted by the county; however, it is now only 10–16 feet wide at its traveled portion, and the county has a duty to maintain it to twenty-four feet.

Mandamus is an extraordinary remedy which is viewed with disfavor. *Laws v. Lee* (1984), Ind.App., 471 N.E.2d 1229, 1235, *reh'g denied.* Such relief should only be granted when the duty sought to be enforced is clear and unequivocal and only a ministerial act remains to be performed. *Gibson v. State* (1968) 251 Ind. 225, 240 N.E.2d 544.

Reasor bases her request for mandate on Exhibits CO (R. 2721) and CV (R. 2726), as well as I.C. 8–17–1–16, 8–17–3–1, 8–17–3–2, and 8–17–3–4. Exhibit CO is a county ordinance which was adopted by the Putnam County Board of Commissioners on December 6, 1954. The ordinance provides in part:

> [B]efore giving its approval to any subdivision of any lots or lands located outside of the corporate limits of any city or town of said county and before any streets or roads will be accepted for public maintenance in said county the following minimum requirements shall be complied with:
>
> 2. All wearing surfaces on all roads or streets shall have a minimum width of not less than twenty-four (24) feet, except at intersections where width will be extended to the full width of the right of way, which is fifty (50) feet.

(R. 2721). The ordinance also requires that roads are to be paved with blacktop material or with other pavements which, in the opinion of the Board of Commissioners, are equivalent to or better than the pavement specified. Exhibit CV is entitled "A Policy on Geometric Design of Highways and Streets 1984" prepared by the American Assoc. of State Highway and Transportation Officials, and states that the travelled portion of the roadway should be no less than 24 feet. Indiana Code 8–17–1–16 requires the county to maintain an improved highway in the same conditions as other roads in the county. Indiana Code 8–17–3–1, 2, and 4 charge the county surveyor and the board of county commissioners with the responsibility of repairing and maintaining highways.

Exhibit CV is a policy statement and does not impose a duty on the the County to maintain the road to any particular width. Exhibit CO, on the other hand, is binding on the County and does impose such a duty. The County argues that the ordinance was intended to set standards which must be met before the road is accepted by the County. Past and present County Commissioners testified to this at trial. County also argues that the road did not meet these standards when it was accepted by the County; therefore, Reasor cannot now complain about the condition of the road.

Taken to its logical conclusion, the County's argument could lead to a situation where it could maintain a road at whatever width it desires as long as it was twenty-four feet wide when it was accepted. This could result in a county full of roads which are not passable by vehicle. Further, the only evidence as to the condition of the road at the time it was accepted by the

---

5. Although the County claimed Reasor violated a County ordinance for causing rainwater and mud to wash onto a county road, the violation did not occur until *after* the complaint for reformation had been filed.

County is found in a report prepared by Alan Stanley, before the road was accepted by the County. It provides:

I have inspected the road known as the Reasor Road located just North of Dunbar bridge over Big Walnut Creek in Greencastle Township. The road meets the County specifications ordinance of 1954 as amended for roads to be accepted into the County System with the exception of the bituminous paving. *Road width,* culvert size, ditches and base material are all adequate. There is no bituminous surfacing on the road.

(R. 2719). The only conclusion that may be drawn from Stanley's report is that the road was in fact twenty-four feet wide when it was accepted.

By accepting the road, the County also accepted the responsibility of maintaining it to twenty-four feet. We therefore reverse the trial court with respect to mandate and remand with instruction to direct the county to increase and maintain the road to twenty-four feet.

### CONCLUSION

In conclusion, we affirm the trial court's order for reformation only as to the legal descriptions to Reasor Hills Drive and to the Bryant and Ympa properties to the extent these properties are reformed to meet Reasor Hills Drive. We reverse the court's determination that Alan Stanley was not negligent in staking the fenceline and remand this issue for a determination of damages. We likewise reverse the court's denial of Reasor's request for mandate and remand with instructions to order the County to increase the width of Reasor Hills Drive to twenty-four feet and to maintain it at that width. As to the other issues raised by Reasor—the alleged fraud and breach of professional duty of Alan Stanley—the trial court is affirmed.

AFFIRMED IN PART, REVERSED IN PART, AND REMANDED.

RUCKER and SULLIVAN, JJ., concur.