May Term, 1857.

HILEMAN
v.
WRIGHT.

---

HILEMAN *v.* WRIGHT and Another.

Equity will relieve against a mistake in a sealed instrument, upon parol evidence; but only upon the clearest proof of the actual agreement and the mistake.

Upon such evidence, equity will either rectify a mistake in a deed founded upon a consideration, according to the intention of the parties; or restrain as to the parts in which it has been framed contrary to, or has gone beyond, their intention in the original contract.

*A.* sold part of a tract of land to *B.,* giving a title-bond, and subsequently a deed. Afterwards he conveyed the residue to *C.* by deed. *B.'s* title-bond and *C.'s* deed recognized a common boundary between the tracts. But *B.'s* deed contained a description different from that in his title-bond, by which, on survey, it was found to convey part of the land embraced by the deed to *C. B.'s* deed was on record when *C.* purchased; but *A.,* the grantor, and not *B.,* was in possession. *C.* brings a bill for the reformation of *B.'s* deed. *Held,* 1. That the fact that *C.* is a stranger to the deed is, in this case entitled

to little weight; but if that were a valid objection, he would still be entitled, if the facts otherwise warrant it, to a restraining order, as to so much of the deed as went beyond the intention of the parties.

2. That the title-bond, and parol evidence, were admissible to explain the deed.

APPEAL from the *Madison* Circuit Court.

STUART, J.—*Hileman* filed his bill in chancery in 1849, against *Wright* and *Snodgrass*, for the reformation of a deed. The bill was pending when the new practice went into operation. Trial by the Court, finding for the defendants, and the bill dismissed. *Hileman* excepted, and appeals.

*Wright* was the owner in fee of a tract of land in *Madison* county, part of which he sold to *Snodgrass*, executing a title-bond, and subsequently a deed. Some five or six years after, he sold the residue to *Hileman*, the plaintiff, for which a deed was executed. In the title-bond to *Snodgrass* and the deed to *Hileman*, a certain lane was made the common boundary. Thus, in the bond, the boundary of the *Snodgrass* purchase, traced to a stone in the center of the lane, runs "thence north with the lane to the section line," &c. *Wright's* deed to *Hileman* is bounded on the west by the same lane. The lane was thus the common boundary between the *Snodgrass* purchase on the west and *Hileman's* on the east. But the deed by *Wright* to *Snodgrass* made the east line run due north from the centre of the lane to the section line—omitting the words, "with the lane." As the course of the lane was west of north, an angle of some acres between the lane and a due north line, was claimed by both parties under their respective deeds.

And the only question is, whether *Hileman* has a right in equity to have the deed to *Snodgrass* reformed according to the original contract expressed in the title-bond.

It should also have been stated that the deed from *Wright* to *Snodgrass* was on record when *Hileman* purchased.

It is well settled that equity will relieve against mistakes or fraud in a sealed instrument upon parol evidence; but only upon the clearest, most satisfactory proof of the ac-

tual agreement and the mistake. 2 Blackf. 426.—4 *id.* 432.— 3 Ind. R. 183.—1 Story's Eq. Jurisp. ss. 110, *et infra.*—10 Ohio R. 85.

The first point is the discrepancy between the title-bond to *Snodgrass* and his deed. How did that discrepancy occur?—by agreement, by fraudulent design, or by mistake?

The parties (*Wright* and *Snodgrass*) had doubtless a right to change the contract and include other boundaries, if they thought proper. The deed itself would be *prima facie* evidence of that change—the last expressed agreement, delivered and accepted as such. If the change was thus made, not by fraud or mistake, but by consent of *Wright* and *Snodgrass*, so long, too, before *Hileman* acquired title, the latter would be without remedy in this form. In that event he must look to his vendor on the covenants.

But the deed is open to explanation. Equity will either rectify mistakes in deeds founded upon consideration, according to the intention of the parties; or restrain as to the parts in which it has been framed contrary to, or has gone beyond their intention in the original contract. Mitf. Eq. Pl. 150, 151, and note.—1 Johns. Ch. 607.—1 Ohio R. 490.—2 Johns. Ch. 585.—*Id.* 630. But only, as already stated, upon proof establishing the mistake beyond reasonable controversy. 1 Story, 173.—2 Ind. R. 69.

In most of the cases referred to, the controversy was between the immediate parties to the deed. But the fact that *Hileman* is a stranger to the deed he seeks to reform, cannot be allowed much weight here; for he is the grantee of the land in controversy from the same grantor under whom *Snodgrass* claims; and at the time of *Hileman's* purchase, *Wright*, his grantor, and not *Snodgrass*, was in possession. If his position were thought to be an objection to reforming the deed, he would still be entitled, if the facts otherwise warranted, to a restraining order, as to so much of the deed as went beyond the intention of the parties. Mitf. Eq. *supra.*

The power of the Court, therefore, to grant relief—either

May Term,
1857.

HILEMAN
v.
WRIGHT.

that sought, or such as the facts warrant—cannot, in the light of the authorities cited, be doubted.

The next step is to ascertain whether a case of mistake, such as is stated in the bill, has been clearly made by the evidence.

*Lindsay*, who drafted the deed, says he had no instructions from the parties directing him to draw the deed differing from the bond; but that if there be any difference between the deed and bond, it is likely he may have made a mistake in drafting the deed. *Lindsay* elsewhere repeats that he was not instructed to draft the deed differing from the bond as to the words "north with the lane."

It is further in evidence that *Wright* and *Snodgrass*, while they continued to be conterminous owners, occupied up to the lane respectively. *Snodgrass* made a small clearing on the north part of his land, and *Wright* a corresponding one on the remaining portion of his land, whereby the lane was extended between them in something of the same direction. After *Wright* sold to *Hileman*, the occupation was the same. Both occupied up to the lane, thus practically giving interpretation to the contract that the lane was the boundary.

It is also in evidence that the quantity sold by *Wright* to *Snodgrass* was fifty-five acres. Making the lane the boundary, *Snodgrass* has west of the lane the proper quantity. Making a due north line from the mouth of the lane the boundary, then, *Snodgrass* would have an excess of several acres.

Up to 1849, when the surveyor proceeded to establish the boundary line between *Snodgrass* and *Hileman*, all the parties acquiesced in the lane as the boundary. *Wright* sold by it, both to *Snodgrass*, as evidenced by the title-bond, and to *Hileman*, as evidenced by his deed. On the day of the survey, *Snodgrass* produced the title-bond of *Wright*, which he still held, and desired the surveyor to run the line in accordance with that instrument.

It also appears in evidence, that *Snodgrass* repeatedly admitted the lane to be the boundary. Thus, when interrogated, before any controversy arose, how much land he

May Term, 1857.

HILEMAN
v.
WRIGHT.

had bought, his reply was, he did not know, as the land had been divided without a surveyor, by himself and *Wright*, and that the lane was the line adopted by them. And again, that they (himself and *Wright*) had made the lane between the farms the line. Nor did *Snodgrass* seem to know, before the day of survey, that the bond and the deed differed; or that the lane varied from a due north line. It would appear that both he and *Wright* adopted the lane as the boundary, thinking, indeed, that its course was due north.

*Wright*, one of the defendants, is examined as a witness, and his evidence is so full that we give its substance, and for the most part its language:—

"I am one of the defendants to the above suit. I sold the piece of land described in the bill, to *Snodgrass*. We did not have it surveyed, but the lane was on the east boundary line of the land sold to him, and was made part of the line. The fence on the *Snodgrass* side of the lane was the line. It ran through the improvement about ninety rods. After the sale, *Snodgrass* extended his fence, with the lane range, some ten or fifteen rods, corresponding with that fence. I extended my fence, on the other side of the lane, fifty rods or more. At the time of the sale, I gave *Snodgrass* a title-bond, in which the lane was made the east line. The deed from me to *Snodgrass* was intended to correspond with that bond. If it differs from that bond, it is not correct. The difference, if any, was not intended. *Snodgrass* and I occupied adjoining farms for five or six years, and had no difference about lines. I also made the deed to *Hileman* to correspond with the line to *Snodgrass*. Both sales were made without survey. I sold to *Snodgrass* to the lane, being fifty-five acres more or less: I mean to the stone, and running thence a north course with the lane. The lane was established as the boundary, without regard to its bearing, and without any intention to resurvey."

Nothing material was elicited on the cross-examination, nor in the evidence of the defendant.

Upon this state of facts we think the Court erred in dis-

May Term,
1857.

HILEMAN
v.
WRIGHT.

missing the bill. The original contract was clearly ascertained. The bond, the admissions of *Snodgrass*, the quantity of land, and the acts of the parties, all accord. They all corroborate the claim of *Hileman*, that there was a mistake in the deed. The evidence shows specifically wherein and how the mistake occurred. Had *Wright* still held the land which he deeded to *Hileman*, his right to have the deed reformed would be clear beyond controversy. In short, here is the clearest and most satisfactory proof, in the language of the books, both of the mistake and of the real contract. 4 Blackf. 432.—1 Ves. 317.—4 Cruise, 212.—10 Pick. 379.—1 Story's Eq. Jurisp. tit. "Mistake."

Perhaps, however, the measure of the relief will come more properly in some other form than in a technical order for the reformation of the *Snodgrass* deed. 1 Story's Eq. Jurisp. 164. It will be equally efficient, and more appropriate, to declare the contract, as ascertained by the evidence, to be, that the lane was and is the boundary; that the words, "north with the lane," were part of the original contract, and should have been in the deed; that they were omitted by mistake of the draftsman—and that, therefore, *Snodgrass* is not entitled to claim, and is enjoined—he and all others holding under or through him—from claiming, anything by virtue of the mistake and defective description in the deed.

*Per Curiam.*—The decree is reversed with costs. Cause remanded, with instructions to the Court below to enter judgment in accordance with this opinion.

*J. Davis*, for the appellant (1).

*D. Kilgore*, for the appellees.

(1) Mr. *Davis* cited 1 Story, Eq. Jurisp. ss. 160, 165, besides other authorities, on a point not touched by the Court.