The **ESTATE OF Bertha L. REASOR**, Appellant (Defendant, Counterclaimant, Third-party Plaintiff, and Counterdefendant below)

v.

**PUTNAM COUNTY, Indiana, S. Page Cotton, Jr., Narda G. Cotton a/k/a Narda Cotton, John F. Hiemenz, Jr., Joann M. Hiemenz, Anthony William Harmless, James E. Ross, Judith D. Ross, Edward G. Ypma, Eleanor S. Ypma, Appellees (Plaintiffs and Counterdefendants below),**

**Alan Stanley and Alan Stanley and Associates, Inc., Appellees (Third-party Defendants and Counterclaimants below).**

No. 55S05–9405–CV–487.

Supreme Court of Indiana.

May 27, 1994.

Rehearing Denied Nov. 14, 1994.

Gregory W. Black, Deckard, O'Brien, Black, Danville, for appellant.

Robert J. Lowe, Greencastle, for appellees.

## ON PETITION TO TRANSFER

SULLIVAN, Justice.

This case comes to us on a petition to transfer the decision of the Court of Appeals in *Reasor v. Putnam County* (1993), Ind. App., 615 N.E.2d 131. This case began as an action to reform the deeds to certain properties that once belonged to Bertha Reasor and her husband, Walker. The Court of Appeals adequately stated the facts, and we shall simply quote them from its opinion:

In this real estate dispute, the trial court ordered that the deeds to several lots, once owned by Appellant, ninety-three year-old Bertha Reasor, and her late husband, Walker Reasor, be reformed. The facts which gave rise to this order span nearly thirty years and are discussed in detail below. . . .

FACTS

Bertha Reasor and her late husband Walker owned approximately 173 acres of land in Putnam County, northwest of Greencastle, Indiana. The property is bordered on the east by Dunbar Bridge Road, and on the south by Reasor Hills Drive. Reasor Hills Drive was a private road until it was conveyed to the county by the Reasors in the late 1960's.

In the late 1960's to 1970, Reasors conveyed eight lots immediately north of Reasor Hills Drive to eight different buyers, conveying the lots in order from west to east. Instead of preparing a plat of the entire property, Mr. Reasor had Alan Stanley prepare surveys and legal descriptions as each lot was sold. Stanley prepared the legal descriptions for all of the conveyances except for the first, based on instructions from Mr. Reasor. For some of the lots, Mr. Reasor and the buyer had set corner stakes. However, all of the lots were sold on the basis of acreage and the buyers understood that the location of the stakes might have to be adjusted to conform to the desired acreage. The deeds were signed by the original owners as well as Mr. and Mrs. Reasor. The lots were conveyed in order from west to east as follows:

| 1 | 2 | 3 | 4 | 5 | EASEMENT | 6 | 7 | 8 |
|---|---|---|---|---|---|---|---|---|
| DeBoer/ Ross | Bryant | Ypma | Gray/ Harmless | Ulm/ Terry | | Cotton | Hiemenz | Gammon |

In preparing the legal descriptions, Stanley assumed an east-west bearing consistent with the legal description in the deed used for the first conveyance (reminder—Stanley did not prepare the legal description for the first conveyance). This east-west bearing was used as a beginning point for each of the subsequent descriptions.

Before Walker Reasor sold the sixth lot from the west to Cotton, he decided to keep a 50–foot strip of property between the fifth and sixth lots, and to grant an easement to the owners of lots 5 and 6. He told Stanley this when he hired him to prepare the legal description for Lot 6 (Cotton). However, Cotton and Walker Reasor set the stake for the south-west corner of the lot only 31 feet from Lot 5 (Ulm/Terry), while the north-west stake was set 50 feet from Lot 5. Stanley knew this and discussed it with Walker Reasor. However, Stanley instructed his employees to prepare a legal description which accounted for the easement. Lot 6 was therefore described on paper with a west property line that was parallel to, and fifty feet away from, the east line of the Ulm/Terry lot. (R. 976). However, the description is inconsistent with the property actually being occupied by Cotton. The descriptions of the two lots east of the Cotton lots were prepared as if there was

a fifty-foot easement west of the Cotton lot. (R. 978).

In 1983, after Walker Reasor had died, Bertha Reasor decided to build a fence on the southern border of her property and employed Stanley's surveying firm to stake a fence on the property lines between her property and the conveyed lots. Stanley did not rely on the legal descriptions in the deeds; rather, his employees staked the fence line according to markers they found in the field, including evidence of an old fence. The staking was completed in 1984. Reasor then had the fence built according to Stanley's stakes.

In 1985, after the new fence had been completed, Reasor was involved in a dispute with Putnam County over some damage allegedly done to her property by county road crews. She hired a different surveyor, Stanley Shartle, to survey the entire 173 acres. Shartle used the bearing system and the initial or "beginning point" as published by Stanley in the Bryant and Ypma deeds (Lots 2 and 3), but not in any of the other deeds. The bearing system uses the east-west quarter-quarter section line "beginning at the stone marking the northwest corner of the northeast quarter of northwest quarter of Section 17, Township 14 North, Range 4 West; thence east...." Shartle looked for a stone marking the northeast corner of the property; however, the stone he found was not the marker used by Stanley in preparing the deeds. Therefore, Shartle's survey resulted in a plat, that, when compared to Stanley's, showed every boundary as being different. Shartle also determined that, in his opinion, the fence line which Stanley staked was farther north than the border indicated by the legal descriptions Stanley prepared. Stanley agreed to this at trial, but maintained that the fence line indicated what the parties originally intended to be the property line between the properties. Some of the original buyers testified (after the fence had been built) that the new fence was built along what they believed to be their northern property line. As to the difference between the starting points, both surveyors and the trial court agree that "honest surveyors may legiti-mately differ on starting points and bearing systems." There is no evidence that one survey—either that of Stanley or Shartle—is "more correct" than the other.

Alan Stanley also prepared two inconsistent, inadequate legal descriptions for Reasor Hills Drive. Neither one was intended to be used for conveyance purposes; however, one was used in a warranty deed from Reasors to the County which was recorded in 1967 and the other appeared in a dedication of the road to the County, which was also recorded. All agree that both descriptions are inadequate and should be reformed.

After Shartle told her about the problems with the fence and the legal descriptions, Reasor, her attorney and Shartle contacted Stanley, who was at that time county surveyor, and his personal lawyer, Robert Lowe, who, coincidentally, was the county attorney. Reasor suggested that Stanley build a new fence, using the correct property lines as reflected in the legal descriptions. Stanley refused because he maintained that, although he did not consult the legal descriptions in staking the fence line, the stakes represented the true intentions of the parties as to the northern boundaries. He also maintained that with the exception of the Bryant and Ypma deeds (Lots 2 and 3), the descriptions of the lots west of the easement are essentially correct and adequate. As to the three lots east of the easement, Stanley maintained that these descriptions are incorrect because the Cotton property cuts into the easement. The parties nonetheless engaged in negotiations. While engaged in negotiations with Reasor, Stanley and Lowe approached the County Commissioners about bringing a reformation action against Reasor. The commissioners approved the lawsuit and approached the property owners, most of whom were joined as plaintiffs.

Putnam County and all but one of the property owners (collectively referred to as "County"), filed suit against Bertha Reasor. She in turn, sued the County and Alan Stanley. After an eight-day trial, several amendments to the pleadings, and

three and ½ years, the trial court issued its decision. A summary of the allegations and the court's order follows:

1. Putnam County and Landowners v. Reasor—This lawsuit was initiated on May 20, 1986, when the County and the landowners sued Reasor for reformation of all of the deeds from the eight conveyed lots. The County also sought reformation of the deed conveying Reasor Hills Drive to the county. All agree the road was not properly described. In an amended complaint filed March 26, 1987, the County alleged Reasor violated a county ordinance prohibiting grading property in such a way so as to cause drainage on to a county road. This allegation stemmed from bulldozing activity conducted by Reasor on June 9, 1986, after the first complaint was filed. The County sought $25.00/day for each day the condition remained.

The court held that all of the deeds would be reformed by Stanley with the expenses to be paid by Stanley or his corporation. Although the court found that Reasor violated the county ordinance in the way in which she graded the property, the court refused to order her to pay a fine.

2. Reasor v. Alan Stanley and Alan Stanley and Assoc., Inc.—In a third party complaint, Reasor sued Stanley for negligence and breach of contract in preparing the legal descriptions, and for negligence in staking the fence. She also charged bad faith and breach of his ethical duty as a surveyor for discussing the dispute over the legal descriptions with others.

The court found that Stanley did not breach a duty to Reasor, but that he admitted responsibility for incorrectly describing the three eastern lots. The court awarded Reasor $1,750 in damages and ordered Stanley to pay $2,000 in surveying costs incurred by Reasor. Stanley was also ordered to buy property from Cotton so that the easement would be 50 feet wide at all points.

3. Reasor v. Putnam County—In a counterclaim, Reasor sought an order from the court to mandate the County to maintain

Reasor Hills Drive in a better condition. She also sought an order requiring the gravelled portion of the road to be moved, alleging that the surface has shifted to the north over the years.

The court refused to order the County to maintain the road in any different condition or to move the road.

4. Stanley v. Reasor—In a counter-claim against Reasor, Alan Stanley alleged defamation as a result of the lawsuit.

The court found for Reasor on Stanley's claim.

*Reasor v. Putnam County,* 615 N.E.2d at 133–36. The Court of Appeals decided four issues:

I. Whether there was sufficient evidence to support reformation of all the deeds;

II. Whether the trial court erred in failing to find Stanley negligent for misidentifying Reasor's south property line;

III. Whether the court erred in not finding Stanley breached his duty to Reasor by disclosing the problems with the legal descriptions to third parties without Reasor's approval and that Stanley did not commit abuse of process; and

IV. Whether the court erred in refusing to mandate the County to maintain Reasor Hill Road to standards set out in the county ordinance.

*Id.* at 136. The Court of Appeals summarized its decision as follows:

In conclusion, we affirm the trial court's order for reformation only as to the legal descriptions to Reasor Hills Drive and to the Bryant and Ypma properties[1] to the extent these properties are reformed to meet Reasor Hills Drive. We reverse the court's determination that Alan Stanley was not negligent in staking the fence line and remand this issue for a determination of damages. We likewise reverse the court's denial of Reasor's request for mandate and remand with instructions to order the County to increase the width of Reasor Hills Drive to twenty-four feet and to maintain it at that width. As to the other

1. Lots No. 2 and No. 3.

issues raised by Reasor—the alleged fraud and breach of professional duty of Alan Stanley—the trial court is affirmed.[2]

*Id.* at 141.

In the time since the Court of Appeals' decision, Bertha Reasor has died; the case continues with her estate now as the Appellant.

We now grant transfer to discuss the degree of proof required in a reformation action, the alleged negligence of Allen Stanley, and whether Putnam County must maintain Reasor Hills Drive at twenty-four feet.

## I.  Reformation

### A.  Standard of Review

When a trial court has made special findings of fact, as it did in this case, an appellate court reviews the sufficiency of the evidence in a two-step process.  First, it must determine whether the evidence supports the trial court's findings of fact; second, it must determine whether those findings of fact support the trial court's conclusions of law.  *Kaminszky v. Kukuch* (1990), Ind.App., 553 N.E.2d 868, 870, *trans. denied.* An appellate court "shall not set aside the findings or judgment unless clearly erroneous," Ind.Trial Rule 52(A); *Egly v. Blackford County Dept. of Public Welfare* (1992), Ind., 592 N.E.2d 1232, 1234–35; and it shall not reweigh the evidence or determine the credibility of witnesses.  *Indianapolis Convention & Visitors Ass'n, Inc. v. Indianapolis Newspapers, Inc.* (1991), Ind., 577 N.E.2d 208, 211.  Findings are clearly erroneous only when the record contains no facts to support them either directly or by inference.  *Id.* at 211–12.  A judgment is clearly erroneous when it is unsupported by the findings of fact and the conclusions relying on those findings.  *De-Haan v. DeHaan* (1991), Ind.App., 572 N.E.2d 1315, 1320, *trans. denied.*[3]

### B.  The Degree of Proof in Reformation Actions

As the Court of Appeals pointed out in its opinion, reformation is "an extreme equitable remedy to relieve the parties of mutual mistake or of fraud.  *Board of Comm'rs of Hamilton County v. Owens* (1894), 138 Ind. 183, 186, 37 N.E. 602."  *Reasor,* 615 N.E.2d at 136.  *See also Citizens Nat'l Bank v. Judy* (1896), 146 Ind. 322, 340, 43 N.E. 259, 265; *Kruse, Kruse & Miklosko, Inc. v. Beedy* (1976), 170 Ind.App. 373, 396–97, 353 N.E.2d 514, 529; *Pearson v. Winfield* (1974), 160 Ind.App. 613, 618, 313 N.E.2d 95, 99.  The remedy of reformation is extreme because written instruments are presumed to reflect the intentions of the parties to those instruments.  *Casa D'Angelo, Inc. v. A & R Realty Co.* (1990), Ind.App., 553 N.E.2d 515, 521, *trans. denied; Ethyl Corp. v. Forcum-Lannom Assoc's, Inc.* (1982), Ind.App., 433 N.E.2d 1214, 1217.[4]

In cases involving mutual mistake such as this one, the party seeking reformation must establish the true intentions of the parties to an instrument, that a mistake was made, that the mistake was mutual, and that the instrument therefore does not reflect the true intentions of the parties.  *Judy,* 146 Ind. at 344–45, 43 N.E. at 266; *Pearson,* 160 Ind.App. at 618, 313 N.E.2d at 99.  As the Court of Appeals in *Pearson* explained:

> The primary purpose of reformation is to effectuate the common intentions of all parties to an instrument which were incorrectly reduced to writing.  It follows that a grant of reformation is necessarily predicated upon a prior understanding between all parties on essential terms.  Otherwise, there would be no standard to which an instrument could be reformed.

*Id.* at 618–19, 313 N.E.2d at 99.

In Indiana, historically, a party seeking reformation of a written instrument has

---

2.  The trial court found for Stanley on the issues of fraud, misrepresentation, breach of fiduciary duty, and interference in the contractual relations of others.  Conclusion of Law No. 10 (R. 387).

3.  *See also Bauer v. Harris* (1993), Ind.App., 617 N.E.2d 923, 926: "If the special findings do not support the judgment, our review is concluded.

We may not search outside the trial court's findings for evidence which supports the judgment." (Citations omitted).

4.  *See also* 66 Am.Jur.2d *Reformation of Instruments* § 123 (1973); 76 C.J.S. *Reformation of Instruments* § 82a (1952).

had to show the intent of the parties to the instrument and the mistake that was made in the instrument by proof that is "clear and satisfactory." *Judy*, 146 Ind. at 347, 43 N.E. at 266;[5] *Pearson*, 160 Ind.App. at 618, 313 N.E.2d at 99.[6] The parties in this case dispute the meaning of "clear and satisfactory," and the interpretation of this phrase is critical in this case because the trial court explicitly made its findings based on a preponderance of the evidence.

The Court of Appeals determined that "clear and satisfactory" means that more than a preponderance of the evidence is required, and held that "the party seeking reformation must show by clear and convincing evidence that a mistake has been made." *Reasor*, 615 N.E.2d at 137. As the Court of Appeals noted, the Seventh Circuit required clear and convincing evidence of a mutual mistake when applying Indiana law in a reformation case.[7] Also, other jurisdictions require more than a preponderance of the evidence.[8] And indeed, there is direct Indiana precedent for requiring clear and convincing evidence in reformation actions. *Stack v. Commercial Towel & Uniform Service* (1950), 120 Ind.App. 483, 492, 91 N.E.2d 790, 794 ("The law is well recognized that courts of equity will allow reformation for any sub-

stantial mistake of fact when established by clear and convincing evidence.").

In *Travelers Indem. Co. v. Armstrong* (1982), Ind., 442 N.E.2d 349, we decided that only clear and convincing evidence of malice, fraud, gross negligence or oppressiveness will support an award of punitive damages. Justice Prentice, writing for the Court, discussed in more general terms when a standard of proof higher than a preponderance of the evidence ought to be required:

> "Clear and convincing" evidence, a stricter degree of proof than a mere preponderance of the evidence is required in some jurisdictions with respect to such issues as fraud, specific performance, forfeiture, etc.
>
> "In ordinary civil actions a fact in issue is ... sufficiently proved by a preponderance of evidence. However, clear and convincing proof is a standard frequently imposed in civil cases where the wisdom of experience has demonstrated the need for greater certainty, and where this high standard is required to sustain claims which have serious social consequences or harsh or far reaching effects on individuals to prove willful,

---

5. "In every case, it must clearly and satisfactorily appear that the precise terms of the contract had been orally agreed upon, and that the writing afterwards signed fails to be, as it was intended, an execution of such previous agreement, but, on the contrary, expresses a different contract, and that this is the result of mutual mistake."

6. "A party seeking reformation on the ground of mutual mistake must establish by clear and satisfactory proof the true intentions common to all parties to the instrument, that a mistake was made, and that the mistake was mutual and consequently the instrument, as written, does not state the true intention or agreement of the parties." *See also Habbe v. Viele* (1897), 148 Ind. 116, 122, 45 N.E. 783, 785 ("A person who seeks to rectify a deed on the ground of a mistake must establish, in the clearest and most satisfactory manner, that the alleged intention to which he desires it to be made conformable continued concurrently, in the minds of all parties, down to the time of its execution." (internal quotation marks omitted)); *Board of Comm'rs of Hamilton County v. Owens* (1894), 138 Ind. 183, 187, 37 N.E. 602, 603 (written instruments will be reformed only where there is " 'the clearest and most satisfactory proof of the mistake and of the

agreement between the parties.' " (quoting, *Gray v. Woods* (1837), 4 Blackf. 432, 432); *Hileman v. Wright* (1857), 9 Ind. 126, 127–28 (requiring "the clearest, most satisfactory proof of the actual agreement and the mistake" and "proof establishing the mistake beyond a reasonable controversy."). *But cf. Harmon v. Pohle* (1914), 55 Ind.App. 439, 445–46, 103 N.E. 1087, 1089 ("The party seeking reformation of a written instrument must give clear and satisfactory proof of the provisions of the actual contract between the parties and of the mutual mistake of fact.... It need not be of 'the most persuasive character,' but to authorize the granting of such relief the facts essential thereto must be clearly and fully established by a fair preponderance of the evidence.").

7. *Holly Stores v. Judie*, 179 F.2d 730, 737 (7th Cir.1950), *cert. denied*, 340 U.S. 814, 71 S.Ct. 43, 95 L.Ed. 598 (1950).

8. *See generally* 66 Am.Jur.2d *Reformation of Instruments* §§ 122–23 (2d ed. 1973); 76 C.J.S. *Reformation of Instruments* § 84 (1952). *See also* Pomeroy, *A Treatise on Equity Jurisprudence* § 859a (5th ed. 1941).

wrongful and unlawful acts to justify an exceptional judicial remedy. . . .

"So, in a number of cases where an adverse presumption is to be overcome, or on grounds of public policy and in view of peculiar facilities for perpetrating injustice by fraud or perjury, the degree of proof required is expressed in such terms as 'clear,' 'clear and conclusive,' 'clear precise and indubitable,' 'convincing,' 'clear and convincing,' 'satisfactory,' 'entirely satisfactory,' 'strong,' 'clear, strong and convincing,' 'clear, distinct and convincing,' 'clear, positive and credible,' and 'unequivocal,' and *the phrase 'preponderance of evidence' has been expressly disapproved as an insufficient measure of the proof required,* as has also the phrase, 'a fair preponderance of the evidence.' "

. . . .

"Preponderance of the evidence," when used with respect to determining whether or not one's burden of proof has been met, simply means the "greater weight of the evidence." To say, then, that in some cases the evidence must overcome opposing presumptions as well as opposing evidence is to acknowledge that more persuasive evidence may be required in some cases than in others.

442 N.E.2d at 360–61 (emphasis in the original) (citations omitted).

Reformation, when granted in equity, overcomes the presumption that the written instrument expresses the parties' intentions; it overcomes the Statute of Frauds, *Colbo v. Buyer* (1956), 235 Ind. 518, 528, 134 N.E.2d 45, 50; and it has the potential to affect others beyond any immediate dispute via the recording system. The Court of Appeals was entirely correct to hold that to succeed in a reformation action a party must show either mutual mistake or fraud by clear and convincing evidence. We approve that holding and add that a party seeking reformation must also show the original intent or agreement of the parties by clear and convincing evidence.

Because the trial court explicitly made its findings by a preponderance of the evidence, those findings cannot support its conclusions of law; and its judgment with respect to the reformation of the deeds in question is clearly erroneous. We will not reweigh the evidence. We must remand the entire reformation portion of this case to the trial court so that it may determine which of its findings are supported by clear and convincing evidence and whether it is necessary to supplement what is already a thirteen volume record with additional evidence from the parties.

Although we are in no position to reweigh the evidence in this case, we will offer several observations about the facts as they come to us. First, the trial court found that the deed for Reasor Hills Drive from the Reasors to the County was inadequate on its face and that all parties agreed that it needed reformation. Finding of Fact No. 6. In Conclusion of Law No. 7, the trial court said that "the Bryant and Ypma boundaries [Lots No. 2 & No. 3] as shown on plaintiff's exhibit No. 37 should be redrawn to be adjacent to the road." We do not find anywhere in the record that the trial court specifically orders the reformation of the deed to the road. There are two conflicting surveys in this case, neither of which shows Lots No. 2 and No. 3 adjacent to the road. The Stanley survey shows the boundaries north of the road; the Shartle survey shows them overlapping the road.

The trial court specifically found by a preponderance of the evidence that Reasor Hills Drive is in the same location as when Putnam County accepted it from the Reasors. Conclusion of Law No. 11. If the trial court finds the evidence clear and convincing not only that a mistake was made in the deed for Reasor Hills Drive, but also that the intent of the parties was that road be where it is today, then it should order the deed reformed to reflect that fact.[9] If the trial court then finds the evidence clear and convincing that the other deeds are also inadequate and that the parties intended that all lots be bounded to the south by the road, reforma-

---

9. We note also that in a reformation case such as this where the deeds are inadequate or ambiguous, the fact finder should consider, together with parol and other evidence of the original intent of the parties, what land the parties currently occupy or have occupied in the past.

tion of the legal descriptions in the appropriate deeds either by resurvey or on the basis of existing information should pose little difficulty.

With respect to the fifty-foot easement between Lots No. 5 and No. 6, the trial court determined by a preponderance of the evidence:

> That in spite of the fact that Walker H. Reasor and Page Cotton, Jr. set the stake at the southwest corner of the Cotton lot [Lot No. 6] approximately 35 feet from the southeast corner of the Terry lot [Lot No. 7], it was the responsibility of Alan Stanley and Alan Stanley & Associates, Inc. to provide for a 50 foot access strip for the Reasors.

Conclusion of Law No. 8. The Court of Appeals affirmed the trial court's decision requiring Stanley to purchase from Cotton the land necessary to create a 50 foot easement between Lots No. 5 and No. 6 since the deed for Lot No. 6 reflects the 50 foot easement but Cotton paid for land up to the 35 foot mark.

■ We disagree with the Court of Appeals and the trial court on this issue. In a reformation action, it is the intent of the parties that controls. If Walker Reasor told Stanley to make a deed reflecting a 50 foot easement, that is evidence that Reasor intended that there be a 50 foot easement, but it is not the controlling fact establishing that the problem is not with the deed to Lot No. 5 but with the land occupied. Similarly, that the deeds to Lots No. 7 and No. 8 assume a 50 foot easement between Lots No. 5 and No. 6 may be additional evidence of Reasor's intent. However, if the trial court finds the evidence clear and convincing that Reasor and Cotton intended that Cotton receive land up to the 35 foot mark, any duty owed to Reasor by Stanley is irrelevant, and the trial court should order that the deed for Lot No. 6 be reformed to reflect the 35 foot easement and that the deeds for Lots No. 7 and No. 8 be reformed correspondingly.

## II. Negligence of Alan Stanley

■ Alan Stanley marked a fence line along the southern boundary of the Reasor property and he did so without consulting the deeds either for the Reasor property or for the eight lots to the south. On appeal, Reasor argued that the trial court erroneously failed to find Stanley negligent for failing to consult the deeds. Because the fence line lies to the north of the line reflected in the deeds, Reasor argues that she was injured by Stanley's negligence in a number of ways. The Court of Appeals agreed with Reasor's argument and ordered the trial court to determine damages. *Reasor*, 615 N.E.2d at 138–39.

■ There is no question that professionals may be held liable in tort if they fail to exercise reasonable care in the fulfillment of their contractual duties.[10] *Flint & Walling Mfg. Co. v. Beckett* (1906), 167 Ind. 491, 498, 79 N.E. 503, 505. *See also Essex v. Ryan* (1983), Ind.App., 446 N.E.2d 368, 371 and cases cited there. Surveyors are no exception. *Id.*

■ The issue presented to us is whether a surveyor is negligent *per se* for failing to consult deeds when marking a fence line. In almost every imaginable case, we think a surveyor would be negligent in not consulting existing deeds for legal descriptions when he or she undertakes to mark a fence line. But we have before us the exceptional case and therefore reject the *per se* rule that the Court of Appeals applied.

The trial court concluded "that there was a meeting of the minds between the Reasors and the purchasers of the lots as to what real estate was to be conveyed, but due to errors or inadequacies in the conveying documents, the descriptions do not accurately reflect the true intention of the parties." Conclusion of Law No. 3. It is our understanding that *all* the deeds in this case were inadequate or ambiguous on their face, that they were negligently prepared by Alan Stanley, that Stanley has admitted as much, and that it was the trial court's judgment that Stanley bear the

---

**10.** The professional occupation of land surveyor is regulated by Article 21.5 of Title 25 of the Indiana Code. Surveyors must be educated, test-ed, and licensed. They must pursue continuing education after they are licensed; they are also subject to disciplinary sanctions.

cost of reforming all of the deeds. To apply a *per se* rule in this case would hold Stanley negligent for failing to rely on the deeds that he himself had negligently prepared and that were, in any case, inadequate on their face. This is too much, especially since it might well have been negligent of Stanley to rely on those deeds in view of his personal knowledge both of the parties and of the history of the transfers.

We are not saying that Stanley is not liable to Reasor in connection with his marking of the fence line. Because we are remanding the entire reformation portion of this case to the trial court, we cannot say where the final property lines will lie after reformation of the deeds. If, however, the Reasor's fence still lies to the north of where it should after reformation of the deeds, and if the misplacement of the fence was proximately caused by Stanley's original negligent preparation of the deeds, then Stanley will be liable to Reasor for damages arising from the misplacement of the fence.

### III. Mandate

■ Reasor Hills Drive is now, on its travelled portion, ten to sixteen feet wide. One of Reasor's counterclaims against the County requested an order that the County maintain the road at twenty-four feet. The basis of Reasor's counterclaim was a 1954 county ordinance that reads:

[B]efore giving its approval to any subdivision of any lots or lands located outside the corporate limits of any city or town of said county and before any streets or roads will be accepted for public maintenance in said county the following minimum requirements shall be complied with:

. . . .

2. All wearing surfaces on all roads or streets shall have a minimum width of not less than twenty-four (24) feet, except at intersections where width will be extended to the full width of the right of way, which is fifty (50) feet.

. . . .

4. All wearing surfaces shall consist of at least six (6) inches of No. 63, rolled down, with two (2) inches of No. 63 stone added to the above after rolling, and

making a total of eight (8) inches of stone when completed.

. . . .

8. Roads or streets may be surfaced with other pavements which, in the opinion of The Board of Commissioners, are equivalent to or better than the pavement above specified.

(R. 2721.) The trial court found:

That it has been shown by a preponderance of the evidence that the road known as Reasor Hills Drive exists in substantially the same location and has been kept in substantially the same condition as when it was accepted by the County and as other roads are kept in repair. The County Ordinance of 1954 does not impose any duty upon the County to maintain roads in a certain condition. The Defendant's request for mandate cannot be granted for reason that there exists no particular nondiscretionary standard by which the County is to maintain its roads. . . .

Conclusion of Law No. 11. The Court of Appeals reversed the trial court and ordered Putnam County to widen Reasor Hills Drive and maintain it at twenty-four feet. As a basis for its decision, the Court of Appeals relied on the statutory provisions of Indiana Code § 8–17–1–16 (1993), which provides:

Any highway improved under this chapter becomes a part of the highway system of the county and shall be kept in repair in the same manner as other roads are kept in repair, and is subject to the same statutes governing the repair and maintenance of highways.

It also relied on the provisions of Indiana Code §§ 8–17–3–1, 2 and 4, which impose on county surveyors and boards of county commissioners the duty of repairing and maintaining roads. *Reasor*, 615 N.E.2d at 140.

The County successfully argued at trial that the 1954 county ordinance set standards which must be met before the County may accept a road. We agree with the County and the trial court. Indiana Code § 8–17–1–1 (1993) provides:

A county executive may construct, reconstruct, improve, and maintain all public highways ... in the county....

Indiana Code § 8–17–1–2 (1993) provides:

A county executive may construct new public highways or may reconstruct and improve any existing public highways or parts of those highways with road paving materials. The executive may establish, lay out, alter, widen, vacate, straighten, or change a public highway in connection with the improvement....

■ First, the 1954 Putnam County ordinance by its own terms clearly created no duty on the part of the County to maintain roads once they have been accepted. Secondly, Indiana Code § 8–17–1–16 imposes no duty on a county to maintain a road until it has been improved under Chapter 1 of Article 17 and therefore has become part of the county highway system. Chapter 1 of Article 17 provides the county executive with the authority to improve county roads. We therefore hold, as the statutory scheme requires, that a county has no duty to maintain a highway that it has accepted until it has improved that highway and that highway has therefore become part of the county highway system.[11] The Court of Appeals feared that the County's argument "could lead to a situation where [the County] could maintain a road at whatever width it desires as long as it was twenty-four feet wide when it was accepted," and "could result in a county full of roads which are not passable by vehicle." *Reasor*, 615 N.E.2d at 140. As the County ordinance reads and the state statutes stand, whether Putnam County will be full of impassable, unimproved roads remains up to the people of Putnam County and not the courts.

### Conclusion

Accordingly, we now grant transfer, vacate the decision of the Court of Appeals, Ind.Ap-

pellate Rule 11(B)(3), and take the following action: 1) we remand the reformation portion of the case to the trial court for it to make new findings of fact and conclusions of law on the basis of evidence that it finds clear and convincing; 2) we also remand Reasor's negligence claim against Stanley for the trial court to determine by a preponderance of the evidence whether Stanley's negligent preparation of the deeds involved in this case proximately caused the misplacement of Reasor's south fence line; 3) we affirm the trial court's judgment that Putnam County is under no duty to maintain Reasor Hills Drive at twenty-four feet; and 4) we incorporate by reference that part of the opinion of the Court of Appeals dealing with Reasor's allegation of fraud. App.R. 11(B)(3).

SHEPARD, C.J., and DeBRULER and DICKSON, JJ., concur.

GIVAN, J., dissents without opinion. He believes that the opinion of the Court of Appeals is correct.

11. We disapprove, therefore, *Gotshall v. Cass County* (1992), Ind.App., 593 N.E.2d 210, *trans. denied,* in which the Court of Appeals at the very least implied that once it had accepted a road, Cass County had a duty to maintain it. *See Id.* at 212. To reiterate, there is no statutory duty to

maintain a road until a county itself has improved the road. By statute, it is the act of improvement by a county that makes a road part of the county highway system and that triggers the statutory obligation of maintenance.