**Pursuant to Ind.Appellate Rule 65(D), this Memorandum Decision shall not be regarded as precedent or cited before any court except for the purpose of establishing the defense of res judicata, collateral estoppel, or the law of the case.**



FILED

Feb 23 2012, 8:54 am

CLERK
of the supreme court,
court of appeals and
tax court

ATTORNEY FOR APPELLANT:

**KIMBERLY J. BACON**
Indianapolis, Indiana

**OCTAVIA FLORENCE SNULLIGAN**
Indianapolis, Indiana

ATTORNEY FOR APPELLEES:

**MICHAEL T. BOHN**
Franklin, Indiana
Indianapolis, Indiana

# IN THE
# COURT OF APPEALS OF INDIANA

| | | |
|---|---|---|
| S.D., | ) | |
| | ) | |
| Appellant-Respondent | ) | |
| | ) | |
| vs. | ) | No. 41A01-1104-DR-170 |
| | ) | |
| B.D., | ) | |
| | ) | |
| Appellee-Petitioner. | ) | |

APPEAL FROM THE JOHNSON SUPERIOR COURT
The Honorable Cynthia S. Emkes, Judge
Cause No. 41D02-0909-DR-372

**February 23, 2012**

**MEMORANDUM DECISION - NOT FOR PUBLICATION**

**ROBB, Chief Judge**

## Case Summary and Issues

After dissolving the marriage of S.D. and B.D. ("Father" and "Mother," respectively), the trial court issued a supplemental decree of dissolution awarding joint legal custody of their daughter and primary physical custody to Mother. In addition, the trial court found Father in contempt for failing to pay day-care expenses as required by the trial court's July 2010 order. Father raises two issues for our review, which we expand and restate as three: 1) whether the trial court erred in granting primary physical custody to Mother; 2) whether the trial court erred in granting joint legal custody; and 3) whether the trial court abused its discretion by holding Father in contempt. Concluding the trial court did not abuse its discretion in granting primary physical custody to Mother, any error on behalf of the trial court in granting joint legal custody cannot now be challenged because it was invited by Father, and the facts do not support a conclusion that Father's failure to pay for day-care was willful, we affirm in part and reverse in part.

## Facts and Procedural History

Mother and Father married in March 2006. They purchased a home, and in October 2006 Mother gave birth to their only child, A.D. In September 2009, Mother petitioned for dissolution, and Father subsequently cross-petitioned for dissolution. Both parents were union workers, but due to the economy Father had experienced long periods of unemployment. When he was employed, he was often required to travel to different states for work. In August 2008, A.D. began going to a day-care in Indianapolis while Mother was at work.

Both Mother and Father requested joint legal custody and primary physical custody. The parties' marriage was dissolved by the trial court's December 13, 2010 partial decree of dissolution. On February 25, 2011, the trial court issued a supplemental decree of dissolution with the following sua sponte findings and conclusions:

> 5. Pursuant to I.C. 31-17-2-8 the Court "shall determine custody and enter a custody order in accordance with the best interests of the child, there is no presumption in favor of either parent. The court shall consider all relevant factors, including the following: (1) the age and sex of the child; (2) the wishes of the child's parent of [sic] parents; (3) The [sic] wishes of the child, with more consideration given to the child's wishes if the child is at least fourteen (14) years of age; (4) the interaction and interrelationship of the child with: (A) the child's parent or parents; (B) the child's sibling; and (C) any other person who may significantly affect the child's best interest; (5) The [sic] child's adjustment to the child's: (A) home; (B) school; and (C) community; (6) the mental and physical health of all individuals involved; (7) Evidence [sic] of a pattern of domestic or family violence by either parent; (8) Evidence [sic] that the child has been cared for by a de facto custodian, and if the evidence is sufficient, the court shall consider the factors as described in section 8.5(b) of this chapter."

> 6. Based on the totality of the evidence, the Court finds and concludes it is in the best interest of [A.D.] for Mother to be granted her physical custody and for Mother and Father to be granted joint legal custody. In the event that the parties are unable to reach a decision regarding an issue appropriate for a joint custodial resolution, the Court refers this case to a Level III Parenting Time Coordinator ("PTC") for resolution.

> 7. It is in [A.D.'s] best interest for Mother to be the primary physical custodian subject to Father's parenting time. . . .

> * * *

> 21. Each party has alleged the other is in contempt for various reasons. The Court finds Mother is not in contempt for violating any provision of any Court Order. The Court finds Father is in contempt for intentionally violating the Court Order herein which ordered him to pay one-half (1/2) of the child's daycare expenses. . . .

Appellant's Appendix at 14, 16.  Father now appeals.

Discussion and Decision

I.  Standard of Review

Child custody determinations and contempt of court determinations are within the sound discretion of the trial court.  Evans v. Evans, 766 N.E.2d 1240, 1243 (Ind. Ct. App. 2002) ("Whether a person is in contempt of a court order is a matter left to the trial court's discretion"); Francies v. Francies, 759 N.E.2d 1106, 1115-16 (Ind. Ct. App. 2001) ("Child custody determinations fall within the sound discretion of the trial court"), trans. denied.  We will not disturb a trial court's discretion on appeal absent a showing of abuse of discretion. Francies, 759 N.E.2d at 1116.  Abuse of discretion occurs when a decision is clearly against the logic and effect of the facts and circumstances before the court or the reasonable inferences drawn therefrom.  Id.

When a trial court enters sua sponte findings, they control only as to the issues they cover and a general judgment will control as to the issues upon which there are no findings. Yanoff v. Muncy, 688 N.E.2d 1259, 1262 (Ind. 1997) (citation omitted).  "A general judgment entered with findings will be affirmed if it can be sustained on any legal theory supported by the evidence."  Id.  When a trial court has made special findings of fact, we review the sufficiency of the evidence using a two-step approach: first, we must determine whether the evidence supports the trial court's findings of fact; and second, we must determine whether the findings of fact support the trial court's conclusions. Id. (citing Estate of Reasor v. Putnam Cnty., 635 N.E.2d 153, 158 (Ind. 1994)).  Findings are set aside only if

4

they are clearly erroneous. Id. Findings are clearly erroneous when the record contains no facts to support them either directly or by inference. Id. A judgment is clearly erroneous if it applies the wrong legal standard. Id. (citation omitted).

## II. Custody

### A. Physical Custody

The trial court found that it was in the best interest of A.D. for Mother to have primary physical custody. Father argues the trial court abused its discretion by granting Mother primary physical custody, contending that Mother engaged in parental alienation. He cites Hanson v. Spolnik, 685 N.E.2d 71 (Ind. Ct. App. 1997), trans. denied, for support. In Hanson, the trial court modified the custody arrangement of M.S., giving the father sole custody. Id. at 76. The trial court awarded sole custody to the father because the mother "engaged in a concerted effort to destroy M.S.'s relationship with [the father]." Id. The actions the mother took in the presence of M.S. included accusing the father of sexually abusing M.S., accusing the father of disrupting M.S.'s class at school and making her cry, telling the father to go to Hell, indicating he was going to get AIDS and informing M.S. she would have to be decontaminated, and repeatedly calling him Satan and accusing him of being homosexual. Id. at 74-75. Further, the mother failed to adequately protect M.S. from harmful incidents with the mother's daughter from a prior relationship.

The father argued, and the trial court agreed, that the mother's objective was to alienate M.S. from her father. This court stated, "[g]enerally, lack of cooperation or isolated acts of misconduct by a custodial parent cannot serve as a basis for the modification of child

5

custody. . . . However, this court has held that a parent's egregious violation of a custody order or behavior towards another parent, which places a child's welfare at stake, can support a trial court's modification of its custody order." Id. at 78.

Although Hanson was a modification of custody and this is an initial determination, the circumstances before us do not support a conclusion that the trial court's decision was in error. Father argues Mother engaged in parental alienation substantial enough to place A.D.'s welfare at stake. Specifically, he first points to an incident where Mother helped A.D. make a family photograph collage that did not include photographs of Father, but did include photographs of Mother's new boyfriend and his three children. The second act Father points out is when Mother enrolled A.D. in day care during a summer when Father was unemployed and available to watch A.D.

We acknowledge that Mother's actions appear adverse to Father, and she should be mindful not to repeat such behavior in the future. Parental alienation is a serious problem and can have lasting implications. Unlike Hanson, however, these isolated incidents are not so egregious as to place A.D.'s welfare at stake. In Hanson, the mother's actions toward the child's father, and toward the child, were severe. Here, Mother's acts of alleged alienation were less substantial. Father also points out an incident where Mother unintentionally burned A.D. with a cigarette. He testified that Mother gave him various explanations and that he did not know what actually occurred. However, there is no evidence that the injury was egregious enough to have jeopardized A.D.'s welfare.

To further examine the trial court's conclusion that it is in A.D.'s best interest for Mother to have primary physical custody, we turn to the factors provided in Indiana Code section 31-17-2-8. Based on the evidence before the trial court, a few factors are more relevant to the trial court's determination in this case. First, assessing the relationship between A.D. and each parent, the testimony reveals that prior to Father's unemployment, his job required that he spend a considerable amount of time away from home. At times he would spend several days away from home and stay in a hotel room. If a job site was located closer to home, he would commute each day. In either scenario, the amount of time Father had at home with A.D. was limited. While we commend his efforts to provide for his family, this necessarily means Mother has spent more time caring for and developing a relationship with A.D.

Second, assessing A.D.'s adjustment to her day-care and community, Father's testimony shows he intended to move A.D. to Monrovia and enroll her in a different day-care than the one she had been attending. Mother testified that A.D. had been learning and making friends at her day-care. Further, while Monrovia is not very far from Greenwood, where Mother lives, it is nonetheless a change for a young child. These facts weigh in favor of A.D.'s best interests being served by Mother having physical custody. Third, although employment is not specifically listed in Indiana Code section 31-17-2-8, the statute does allow for the consideration of "all relevant factors," and the employment of Mother and Father are relevant here. Mother testified she has steady employment with consistent 8:00 a.m. to 4:30 p.m. hours in Indianapolis. While Father was not presently working, his

testimony suggested based on his experience with the union that laid him off that he would eventually regain employment through the union. It is therefore reasonable to infer from the evidence that he would resume a job requiring him to work at job sites far away from home and A.D. Based on the totality of the circumstances, the trial court did not abuse its discretion in concluding it is in the best interest of A.D. for Mother to have physical custody.

## B. Joint Legal Custody

Indiana Code section 31-17-2-13 provides, "The court may award legal custody of a child jointly if the court finds that an award of joint legal custody would be in the best interest of the child." In addition to using the best interest standard, Indiana Code section 31-17-2-5 gives trial courts more specific factors to consider in determining whether joint legal custody is appropriate:

> [T]he court shall consider it a matter of primary, but not determinative, importance that the persons awarded joint custody have agreed to an award of joint legal custody. The court shall also consider:
> (1) the fitness and suitability of each of the persons awarded joint custody;
> (2) whether the persons awarded joint custody are willing and able to communicate and cooperate in advancing the child's welfare;
> (3) the wishes of the child, with more consideration given to the child's wishes if the child is at least fourteen (14) years of age;
> (4) whether the child has established a close and beneficial relationship with both of the persons awarded joint custody;
> (5) whether the persons awarded joint custody:
>     (A) live in close proximity to each other; and
>     (B) plan to continue to do so; and
> (6) the nature of the physical and emotional environment in the home of each of the persons awarded joint custody.

Father contends the trial court abused its discretion because its supplemental decree is silent as to both statutes. Although we disagree with Father's legal argument, we need not discuss

8

it because a party may not invite error and then rely on such error as grounds for reversal. Reinhart v. Reinhart, 938 N.E.2d 788, 791 (Ind. Ct. App. 2010). Father expressly requested the trial court award joint legal custody, both in his document of requests submitted to the trial court on October 6, 2010, and during his testimony on that day. Any error the trial court may have committed by granting joint legal custody cannot now be challenged by Father.

## III. Contempt

Indiana Code section 34-47-3-1 provides that anyone guilty of "willful disobedience" of a court order is guilty of indirect contempt. Father argues the trial court's finding of contempt against him was an abuse of discretion because the record does not support such a finding. We agree. Father had been unemployed since May 2010, and the trial court's supplemental decree includes that fact. There is nothing in the findings or conclusions to demonstrate that Father was willfully disobeying the trial court's order by failing to pay for A.D.'s day-care. Rather, the facts and conclusions included in the supplemental decree imply Father's inability to pay his share of day-care costs. In addition to clearly stating Father's unemployed status, the trial court modified Father's child support obligation to $0.00 so that he could afford to pay his share of day-care expenses with his unemployment benefits. This indicates that prior to the trial court's decree of February 25, 2011, Father was financially unable to obey the trial court's previous order that required him to pay day-care expenses. The trial court abused its discretion, and its finding of contempt against Father is reversed.

## Conclusion

9

We affirm the trial court's grant of primary physical custody to Mother and joint legal custody to Mother and Father. The trial court did not abuse its discretion in awarding Mother primary physical custody, and any error the trial court may have committed by granting joint legal custody cannot now be challenged by Father because any such error was invited. We reverse the trial court's finding of contempt against Father because the record does not support a conclusion that his failure to pay for day-care was willful.

Affirmed in part, reversed in part.

NAJAM, J., and VAIDIK, J., concur.